IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-01516-DME-BNB

TED WOOD,

        Plaintiff,

v.

HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY and
R.R. DONNELLEY & SONS COMPANY,

        Defendants.

---

## ORDER ON PARTIAL MOTION TO DISMISS

---

Pending before the Court is a motion filed on June 2, 2007, by Defendants to dismiss some of Wood's claims in this case pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. # 89.) The motion requests that this Court dismiss for failure to state a claim upon which relief can be granted Wood's fraud and fraudulent concealment claims asserted under Colorado law. The motion also requests that this Court dismiss for lack of subject matter jurisdiction Wood's copyright infringement claim to the extent that claim relies on foreign infringements. Finally, the motion also requests that this Court dismiss Wood's request for punitive damages. Wood responded to Defendants' motion on June 14, 2008, (Dkt. # 90), and Defendants replied on July 2, 2008, (Dkt. # 94). Therefore, the motion is ripe for determination.

For the reasons stated below, this Court DENIES the motion.

**I.     BACKGROUND**

Ted Wood ("Wood") is a professional photographer and resident of Colorado. Houghton Mifflin Harcourt Publishing Company ("HMH") is a textbook publisher with its primary offices in Boston, Massachusetts. R.R. Donnelley & Sons ("Donnelley") is a full-service printer with its headquarters in Chicago, Illinois. The current dispute stems from six separate licenses Wood sold HMH for nine of Wood's photographs to be reproduced in an HMH textbook series, The Language of Literature, and in an HMH publication titled Summer Success Reading Magazine. Donnelley printed both publications.

Wood alleges that HMH and Donnelley infringed his copyrights in the photographs by publishing more than the 40,000 copies authorized by each license. Wood also alleges that as a result of their licensing agreements, HMH committed common-law fraud and fraudulent concealment because it knowingly misrepresented to him that it would only print 40,000 copies of each publication. Based on these allegations, Wood seeks an injunction against Defendants, as well as actual and punitive damages and costs.

In response, Defendants raise four arguments in their partial motion to dismiss. Defendants first contend that this Court lacks subject matter jurisdiction over Wood's copyright infringement claim to the extent that it involves foreign sales of the publications. Second, Defendants assert that Wood fails to state a claim for fraud, pursuant to Colorado law, because he failed to plead that HMH made any misrepresentations and failed to plead that he suffered harm due to his reliance on those misrepresentations. Third, Defendants also contend that Wood fails to state a

claim for fraudulent concealment, pursuant to Colorado law, because he failed to allege that HMH had a duty to disclose that arose before the parties entered into the license agreements. Finally, Defendants allege that if this Court dismisses the fraud claims, Wood's request for punitive damages should be dismissed as well.

## II. MOTION FOR PARTIAL DISMISSAL PURSUANT TO RULE 12(b)(1)

"The party seeking to invoke the jurisdiction of a federal court must prove that the case is within the court's subject matter." Henry v. Office of Thrift Supervision, 43 F.3d 507, 512 (10th Cir. 1994). A defendant facially attacks the subject matter jurisdiction necessary for a plaintiff's claim if he questions the sufficiency of the complaint. Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). In such a circumstance, this Court determines whether subject matter jurisdiction exists after accepting the allegations in the complaint as true. Id.

Defendants contend that this Court lacks subject matter jurisdiction over Wood's copyright infringement claim to the extent that claim alleges that HMH "distributed books outside the U.S." (Dkt. # 89, at 5.) Given recent Supreme Court guidance regarding subject matter jurisdiction, however, this Court concludes that the extraterritorial application of United States copyright laws represents an element of Wood's claim for copyright infringement and does not affect subject matter jurisdiction. Therefore, the Court denies the Defendants' motion for partial dismissal pursuant to Rule 12(b)(1).

The Supreme Court recently admonished federal courts on their overly broad use of the term "jurisdictional." Arbaugh v. Y&H Corp., 546 U.S. 500, 510–11 (2006). In Arbaugh, the Court addressed whether Title VII's definition of the term "employer" constituted part of the claim for relief or placed a jurisdictional limit on Title VII claims.

Id. at 503–04. The Court specifically noted that "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous." Id. at 511. The Court then held that the fifteen-employee requirement contained in the definition of employer was not jurisdictional because, inter alia, that definition appeared in a separate provision from the jurisdictional grant in 28 U.S.C. § 1331. Id. at 514–15. The Court's language regarding this "readily administrable bright line" is instructive here: "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." Id. at 515.

Relying on this guidance from the Supreme Court, the Federal Circuit recently addressed the exact issue before this Court. See Litecubes, LLC v. N. Light Prods., Inc., 523 F.3d 1353 (Fed. Cir. 2008). In Lightcubes, the defendant challenged the subject matter jurisdiction of the district court due to the defendant's assertion that it did not sell infringing products in the United States. Id. at 1359. The Federal Circuit held that this argument was irrelevant to the question of subject matter jurisdiction. Id. at 1368. Building on the guidance from Arbaugh, the court stated:

> There is no indication that Congress intended the extraterritorial limitations on the scope of the Copyright Act to limit the subject matter jurisdiction of the federal court. Accordingly, we hold that the issue is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction . . . .

Id.; see also Subafilms, Ltd. v. MGM-Pathe Commc'ns Co., 24 F.3d 1088, 1091 n.5 (9th Cir. 1994) ("[T]he existence of subject matter jurisdiction under 28 U.S.C. § 1338(a) is distinct as a general matter from the question of whether a valid cause of action is stated.").

Given the Supreme Court's language in Arbaugh, this Court finds the Federal Circuit's approach and conclusion persuasive. Accordingly, the Court denies the Defendants' motion for partial dismissal pursuant to Rule 12(b)(1).

## III. MOTION FOR PARTIAL DISMISSAL PURSUANT TO RULE 12(b)(6)

To survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must include in his complaint "enough facts to state a claim to relief that is plausible on its face." TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1236 (10th Cir. 2007) (internal quotation marks omitted) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). In addition, Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Tenth Circuit has interpreted this rule to require a complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks omitted) (quoting Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)). To determine if dismissal is appropriate, this Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted) (quoting David v. City & County of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996)).

During its analysis, this Court may look both to the complaint as well as any documents attached to the complaint as exhibits. Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001). Although this Court accepts as true all well-pleaded allegations

and draws all inferences in favor of the plaintiff, if there is any dispute between the allegations in the complaint and the attached exhibits, the exhibits control. Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969); see also Centers v. Centennial Mortgage, Inc., 398 F.3d 930, 933 (7th Cir. 2005) ("[T]o the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls."); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1327 (3d ed. 2004) ("[W]hen a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.").

**A. Fraud**

The elements of common law fraud under Colorado law are:

> [1] that the defendant made a false representation of a material fact; [2] that the party making the representation knew it was false; [3] that the party to whom the representation was made did not know of the falsity; [4] that the representation was made with the intent that it be acted upon; and [5] that the representation resulted in damages.

Brody v. Bock, 897 P.2d 769, 775–76 (Colo. 1995). Mere failure to perform a contractual obligation does not constitute fraud. State Bank of Wiley v. States, 723 P.2d 159, 160 (Colo. Ct. App. 1986). An allegation of fraud can be based on a representation regarding a future act, however, so long as that promise is "coupled with a present intention not to fulfill the promise." Id. (quotation marks omitted) (quoting Kinsey v. Preeson, 746 P.2d 542, 550 (Colo. 1987)).

Defendants contend that Wood's fraud claim should be dismissed because Wood's second amended complaint and attached exhibits failed to plead facts sufficient

to satisfy the first and last elements of fraud under Colorado law. Wood asserts that his second amended complaint alleges that HMH misrepresented the nature of the license agreements and that he adequately pleaded two distinct harms. Wood also contends that any disagreement regarding the meaning of the exhibits should be construed in his favor. The Court will consider Defendants' arguments in turn.

The second amended complaint adequately alleges that HMH made a false representation by alleging that HMH "expressly represented to Wood that the use of his photographs would not exceed 40,000 copies." (Dkt. # 80, Ex. 1 at 4.) Thus, this Court must determine whether the letters from HMH, attached as exhibits, support or contradict that allegation.

The four attached letters could be construed to contain misrepresentations and therefore could support the allegations in the complaint. In relevant part, the first letter states, "[o]ne-time North American rights are needed for a press run of under 40,000 circulation." (Dkt. # 80, Ex. J.) The second letter states, in pertinent part, "[w]e request permission to reuse the following images that appeared in the previous Grade 6 edition, with North American rights, English only, for a print run of 40,000." (Dkt. # 80, Ex. K.) The third letter states, "[w]e request permission to reuse the following color images that appeared in the previous Grade 7 edition, with North American rights, English only, inside editorial use, for a print run of 40,000." (Dkt. # 80 Ex. L.) The fourth letter states, "[o]ne-time US Engl. language rights for use in a softcover 16 page elementary school reading magazine. Under 40,000 print run." (Dkt. # 80, Ex. M.) Reading these letters in the light most favorable to Wood, these statements could be construed as representations that HMH would not exceed the licenses by printing more than 40,000

copies. Thus, the attached letters do not contradict the complaint, and the Court concludes that Wood has sufficiently alleged that Defendants made a false representation.

Turning to the fifth element, Defendants claim that Wood's fraud claim fails because he did not plead any damages that arise directly from the fraud. Contrary to Defendants' assertion, Wood's second amended complaint clears this hurdle by alleging two harms. The complaint first alleges that "Wood relied to his detriment on the truthfulness of HMH's requests for licenses for only 40,000 copies . . . in establishing the fees charged." (Dkt. # 80, Ex. 1, at 5 (emphasis added).) At the pleading stage, the Court concludes that this is a sufficient allegation of damages. Damages here might take several forms and it would be premature to dismiss the complaint on this basis at this time.

The second amended complaint also alleges that the fraud prevented Wood from discovering the infringement and enforcing his copyrights. (Id.) This alleged harm arises directly from the alleged fraudulent misrepresentation and thus sufficiently alleges a harm that satisfies the fifth element of fraud under Colorado law.

Because Wood has pleaded sufficient facts for his fraud claim to be "plausible on its face," this Court denies Defendants' motion to dismiss Wood's fraud claim.[1] See

---

[1] Defendants also assert that Wood's complaint does not comply with Rule 9(b)'s requirement to allege fraud with particularity. Rule 9(b) "requires only the identification of the circumstances constituting fraud." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997). Thus, "a complaint must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Id. (internal quotation marks omitted) (quoting Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)). In light of the discussion above, the Court concludes that
(continued...)

TON Servs., Inc., 493 F.3d at 1236.

### B. Fraudulent concealment

In Colorado, the elements of fraudulent concealment are:

> (1) the party concealed a material existing fact that in equity and good conscience should be disclosed; (2) the party knew it was concealing such a fact; (3) the other party was ignorant of the existence of the fact concealed; (4) the concealment was practiced with the intent that it be acted on; and (5) the concealment resulted in damage to the other party.

Poly Trucking, Inc. v. Concentra Health Servs., 93 P.3d 561, 563 (Colo. Ct. App. 2004). Colorado courts look to the Restatement (Second) of Torts § 551(2) to determine whether a party has a duty in equity or conscience to disclose a material fact. See, e.g., Poly Trucking, 93 P.3d at 564; see also Berger v. Sec. Pac. Info. Sys., Inc., 795 P.2d 1380, 1383 (Colo. Ct. App. 1990). In pertinent part, § 551(2) states that "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading . . . ." Restatement (Second) of Torts § 551(2) (1977).

Wood's complaint alleges all five elements of fraudulent concealment. The first and the last elements merit specific discussion. As noted above, duty to disclose a material fact exists where an incomplete or ambiguous declaration gives rise to a misleading statement. See id. § 551(2)(b). HMH's letters to Wood requested licenses

---

[1](...continued)
Wood's complaint satisfies these requirements.

for 40,000 copies, and Wood alleges that at the time the licenses were requested, HMH was aware that it planned to violate the licenses. Wood also alleges that HMH specifically requested a license for a quantity of copies less than its planned production run as part of a scheme fraudulently to reduce its license fee expenses.

After drawing all reasonable inferences in Wood's favor, these allegations are sufficient to establish that HMH had a duty to disclose its publication plans to Wood. HMH's requests for licenses for 40,000 copies were, pursuant to Wood's allegations, at best partial statements of the truth and misleading. At the very least, these requests for 40,000 copies fall within the ambit of § 551(2)(b) because they allow for the possible (and reasonable) interpretation that HMH only intended to publish up to 40,000 copies. See Restatement (Second) § 551 cmt. g (explaining that § 551(2)(b) applies if a statement is sufficiently ambiguous that a false interpretation is possible). Accordingly, the amended complaint does allege that HMH had a duty to disclose.

Turning to the fifth element, Defendants claim that Wood's fraudulent concealment claim fails because he did not plead any damages that arise directly from the concealment. As discussed above, however, Wood adequately alleged harm arising from Defendants' alleged fraudulent behavior. These allegations of harm apply equally to Wood's fraudulent concealment claim, and therefore, because these allegations satisfy the damages element for a fraudulent concealment claim, dismissal pursuant to Rule 12(b)(6) is not appropriate.

### C. Punitive damages

In their final argument, Defendants assert that this Court should dismiss Wood's claim for punitive damages. The Court declines to take that step. Pursuant to relevant

Colorado statute, punitive damages are permissible for fraud and fraudulent concealment. See Colo. Rev. Stat. § 13-21-102. Accordingly, Wood may pursue his claim for punitive damages because his claims for fraud and fraudulent concealment remain viable.

For the reasons stated above, the Court DENIES Defendants' partial motion to dismiss.

DATED: August 5, 2008

BY THE COURT:

*s/ David M. Ebel*

---

David M. Ebel
United States Circuit Judge